# IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON

## DIVISION II

| | |
|---|---|
| STATE OF WASHINGTON, | No. 52919-0-II |
| Respondent, | |
| v. | |
| MICHAEL RENE WEST, | UNPUBLISHED OPINION |
| Appellant. | |

MELNICK, J. — Michael West appeals from his conviction for failing to register as a sex offender. West argues the trial court violated his right to a fair trial by denying his pretrial motion to dismiss, by violating his right to self-representation, and by improperly admitting propensity evidence. West also argues the State committed prosecutorial misconduct by repeatedly referring to propensity evidence during closing arguments. We affirm.

## FACTS

In 1995, a jury convicted West of two sex crimes that required him to register as a sex offender. As part of the registration requirement, West had to notify the sheriff of his change of address within three business days of moving. RCW 9A.44.130(5)(a).

West failed to register his new address after moving out of a hotel where he temporarily resided. A police officer investigated and initially determined that West had checked out of the hotel on December 4, 2017.

The State initially charged West with failing to register as a sex offender for the period of December 8, 2017 to December 16, 2017. However, in September 2018, after further

investigation, the State discovered it had incomplete records. Additional research revealed that West had checked out of the hotel on December 8, 2017.

On September 26, the State informed West that it would be amending the charge to allege the crime occurred from December 14, 2017 to April 14, 2018. In response, West filed a motion to dismiss under CrR 8.3(b), claiming the State had mismanaged discovery.

On October 1, the day before the original trial date, the court considered the State's motion to amend the charge and West's motion to dismiss. The State requested a continuance to October 9 so it could review West's motion to dismiss, which the court granted.

On October 9, the trial court heard arguments pertaining to West's motion to dismiss. West argued the State mismanaged the investigation and delayed providing him discovery, which prejudiced his right to a fair and speedy trial. The court ruled West suffered no prejudice from the amended charge because the time period in the new charge included the originally charged time. Additionally, West's theory of defense did not change. West had prepared to defend the case by showing that he had registered with the sheriff's office sometime between December 4 and December 17, 2017. The court reasoned this defense would be the same for the amended charge. In addition, the court noted that the time for trial would not expire for more than a month.

The court concluded the circumstances surrounding the State's delay in providing discovery did not affect West's rights to a fair trial and did not constitute arbitrary action, misconduct, or mismanagement under CrR8.3(b).

Later that day, West moved to continue the trial to November 28, 2018. The court granted the continuance.

On November 2, West moved to waive counsel and proceed as a self-represented litigant (SRL). West stated three times that he wanted to proceed without counsel. During the subsequent

colloquy, the court and West discussed the dates charged in the information.  The court informed West he would have to follow the rules of evidence and criminal procedure, and that if he testified, he must do so in question and answer format.  The court also told West that his sentence if convicted would be between 43 to 57 months and a maximum fine of $20,000.  The court granted West's request to proceed as an SRL.  The court also appointed standby counsel.

At the start of the trial on December 11, the State objected to West seeking legal advice from his standby counsel.  The court determined that to prevent confusion about West's SRL status, standby counsel had to sit behind West and could only provide legal advice off the record and outside the presence of the jury.

On the morning of December 12, after struggling to cross-examine the prosecution's first witness, West requested that his counsel be reappointed.  The trial court granted that request.  West moved for a mistrial and a two-to-three day continuance.  The court denied both the motion for a mistrial and the motion to continue.  The court did recess the case until later in the afternoon and it did allow West to recall the first witness.

During the trial, the State sought to admit testimony from West's community corrections officer (CCO) to help it prove its case.  The CCO would address four topics.  First, he would testify that West was subject to community custody conditions.  Second, the CCO would testify that West knew he was subject to the sex offender registration requirement which would show West knowingly violated it.  Third, the CCO would testify that West had resided at the hotel.  Finally, the CCO would testify that West had violated his community custody conditions by not contacting his CCO or the sheriff's department, and that a warrant had been issued for these failures.  A prior witness had already testified regarding the existence of the same warrant.

The trial court ruled that the testimony was relevant and admissible for the purposes of proving West was subject to community custody conditions, that West knew he was required to register, that West had lived in the hotel, and that West had an outstanding warrant. The court excluded any evidence that West had violated his community custody conditions. The court allowed the CCO to state that a warrant existed. In ruling, the court reasoned the testimony about the warrant was harmless because the existence of the warrant had already been established through other testimony. The court did not explicitly conduct an ER 404(b) balancing test on the record.

West's CCO testified that he told West he had to register as a sex offender with the sheriff's department, that he knew West was staying at the hotel, that West was subject to community custody conditions, and that a warrant had been issued for West.

Finally, West's CCO testified that West had violated his community custody conditions, to which West objected. The court sustained the objections and instructed the jury to disregard this testimony.

During closing arguments, the State argued its theory of the case and told the jury it should abide by the jury instructions and use common sense to evaluate the credibility of witnesses. It also argued that West had presented no physical evidence that he had registered. The State also argued that West was "in the wind" and used the evidence of his violation of community custody conditions to argue West did not want to comply with the Department of Corrections or state law. Report of Proceedings (RP) (Dec. 17, 2018) at 603. The defense objected, and the court sustained the objection and instructed the jury to disregard this argument. The State went on to argue that West went "off the grid" in regard to his community custody conditions and his registration requirement. RP at 603-04.

4

The jury convicted West of one count of failure to register as a sex offender. West appeals.

ANALYSIS

I.     MOTION TO DISMISS

West argues that the trial court abused its discretion when it denied his motion to dismiss his case. He argues he suffered prejudice because the State mismanaged his case. We disagree.

We review a trial court's CrR 8.3(b) ruling for abuse of discretion. *State v. Michielli*, 132 Wn.2d 229, 240, 937 P.2d 587 (1997); *State v. Brooks*, 149 Wn. App. 373, 384, 203 P.3d 397 (2009). A trial court abuses its discretion when its decision is manifestly unreasonable or based on untenable grounds. *Michielli*, 132 Wn.2d at 240; *Brooks*, 149 Wn. App. at 384.

Under CrR 8.3(b), the court, "in the furtherance of justice, after notice and hearing, may dismiss any criminal prosecution due to arbitrary action or governmental misconduct when there has been prejudice to the rights of the accused which materially affect the accused's right to a fair trial."

Before a trial court may dismiss charges under CrR 8.3(b), a defendant must show by a preponderance of the evidence "'(1) arbitrary action or governmental misconduct and (2) prejudice affecting the defendant's right to a fair trial.'" *State v. Rohrich*, 149 Wn.2d 647, 654, 71 P.3d 638 (2003) (quoting *Michielli*, 132 Wn.2d at 240). Governmental misconduct need not be evil or dishonest; simple mismanagement is sufficient. *State v. Blackwell*, 120 Wn.2d 822, 831, 845 P.2d 1017 (1993). Violations of obligations under the discovery rules can support a finding of governmental misconduct. *See Brooks*, 149 Wn. App. at 375.

A defendant who brings a motion to dismiss under this rule must prove prejudice because of the state's arbitrary action or the state's misconduct. *Michielli*, 132 Wn.2d at 240-41. In *Michielli*, the prosecution amended charges five days before trial. 132 Wn.2d at 243-44. The

court determined that the amendment constituted misconduct because the prosecution possessed all the information necessary to amend the charges several months beforehand. *Michielli*, 132 Wn.2d at 244. The court concluded the only reason the prosecution waited was to harass the defense. *Michielli*, 132 Wn.2d at 244. The amendment prejudiced the defendant for two reasons. *Michielli*, 132 Wn.2d at 244. First, the state added four serious charges, which required additional time to prepare a defense. *Michielli*, 132 Wn.2d at 244. Second, if the defense sought a continuance, the trial date would be beyond the date necessary to satisfy the defendant's right to a speedy trial.[1] *Michielli*, 132 Wn.2d at 244. The court determined that forcing the defendant to choose between prepared counsel and a speedy trial was prejudicial. *Michielli*, 132 Wn.2d at 244.

In the present case, the court did not abuse its discretion when it denied West's CrR 8.3(b) motion to dismiss. West demonstrated neither prejudice nor arbitrary action or misconduct by the State. The court determined that the amended information did not prejudice West because he would not need to prepare a new defense, and West never refuted the court's determination. West admitted he had prepared a defense for the initial period, i.e. he had registered. West has not demonstrated any prejudice.

The court allowed the State to amend the charge based on newly discovered evidence. The new dates alleged in the amended information encompassed the original dates, but slightly expanded them. The State did not allege any new or different crimes. The court did not abuse its discretion in determining the State did not either act arbitrarily or commit misconduct.

---

[1] Michielli only asserted a violation of his rights to speedy trial under a prior version of CrR 3.3. *Michielli*, 132 Wn.2d at 245. He never alleged a violation of his constitutional speedy trial rights.

West also argues that the discovery delays violated his right to a fair trial by requiring him to choose between prepared counsel and his right to a speedy trial.[2] To support his claim, West cites to *Brooks* and *Michielli*, where the defendants argued that discovery delays forced them to choose between prepared counsel or a speedy trial. *Brooks*, 149 Wn. App. at 384; *Michielli*, 132 Wn.2d at 244. Neither *Brooks* nor *Michielli* support West's claim. As previously stated, West was prepared to present his defense, and then voluntarily requested a continuance. He also waived his right to counsel. Therefore, West was not forced to choose between prepared counsel and his time for trial rights.

The court did not abuse its discretion by denying West's CrR 8.3(b) motion to dismiss.

II.      WAIVER OF COUNSEL

West argues that the trial court abused its discretion when it determined West had unequivocally and intelligently waived counsel. We disagree.

A trial court's decision to grant or deny a defendant's request to represent himself is reviewed on appeal for abuse of discretion. *State v. Curry*, 191 Wn.2d 475, 483, 423 P.3d 179 (2018). A court abuses its discretion only if its decision is manifestly unreasonable, rests on facts unsupported in the record, or was reached by applying the wrong legal standard. *Curry*, 191 Wn.2d at 483-84. Great deference is given to the trial court's determination because it had "the benefit of observing the behavior and characteristics of the defendant, the inflections and language used to make the request, and the circumstances and context in which it was made." *Curry*, 191 Wn.2d at 485.

---

[2] Although West uses the term "speedy trial," he is actually arguing that he had to choose between prepared counsel and his "time for trial" rights under CrR 3.3.

A criminal defendant has the constitutional right to waive the assistance of counsel and represent himself at trial. *Faretta v. California*, 422 U.S. 806, 819-21, 95 S. Ct. 2525, 45 L. Ed. 2d 562 (1975); *State v. Madsen*, 168 Wn.2d 496, 500, 503, 229 P.3d 714 (2010). This right is protected by the Sixth Amendment of the United States Constitution and article I, section 22, of the Washington State Constitution. *Madsen*, 168 Wn.2d at 503.

To validly and effectively waive the right to counsel, the record must unequivocally demonstrate that the accused knowingly, intelligently, and voluntarily waived the assistance of counsel. *Faretta*, 422 U.S. at 835; *Madsen*, 168 Wn.2d at 504. At a minimum, a defendant seeking to proceed without counsel must understand "(1) the nature of the charges; (2) the possible penalties; and (3) the disadvantages of self representation." *State v. Woods*, 143 Wn.2d 561, 588, 23 P.3d 1046 (2001). There is no explicit test to determine whether a defendant's waiver of counsel is valid, but generally, the colloquy should include the "seriousness of the charge, the possible maximum penalty involved, and the existence of technical procedural rules governing the presentation of the accused's defense." *State v. Modica*, 136 Wn. App. 434, 441, 149 P.3d 446 (2006).

The court engaged in a colloquy with West and informed him of the charge, the possible penalties, and the disadvantages of self-representation. The court satisfied the three requirements from *Woods*.

West made an unequivocal waiver. He stated several times he wanted to proceed without a lawyer, even after the trial court questioned him and talked to him about the waiver.

West understood the nature of the charge. The court discussed with West the range of dates that formed the basis for the charge. Additionally, West was present during several motions where the charge was discussed, including the motion to dismiss.

West understood the possible penalties. West knew his standard range was 43 to 57 months and carried with it a maximum fine of $20,000.

Lastly, West understood the disadvantages and dangers of self-representation. The court informed West he would need to be familiar with and use the rules of evidence and criminal procedure. Additionally, the court told West that the State would not be available to assist him in the rules of evidence. The court also explained the difficulties West would face if he decided to testify on his own behalf. Based on West's answers to the court's questions and descriptions, the trial court granted West's motion to proceed as an SRL.

We conclude that the trial court did not abuse its discretion when it ruled West made an unequivocal, intelligent waiver of his right to counsel and allowed him to represent himself. .

III.     ACCESS TO STANDBY COUNSEL

West argues that the trial court abused its discretion when it placed restrictions on West's ability to confer with his standby counsel in the presence of the jury. We disagree.

Neither party argues for a specific standard of review. However, in *State v. Silva*, this court determined that trial courts have discretion to determine what constitutes reasonable access to state resources for self-represented defendants. 107 Wn. App. 605, 622-23, 27 P.3d 663 (2001). Therefore, we review this issue for abuse of discretion.

A defendant who has waived counsel loses the traditional benefits of the right to counsel. *Faretta*, 422 U.S. at 835. A court may, at its own discretion or upon the request of the defendant, appoint standby counsel. *Faretta*, 422 U.S. at 825. However, there is no absolute right to standby counsel by an SRL. *State v. DeWeese*, 117 Wn.2d 369, 379, 816 P.2d 1, (1991). If the court appoints standby counsel, the lawyer "must be (1) candid and forthcoming in providing technical information/advice, (2) able to fully represent the accused on a moment's notice, in the event

9

termination of the defendant's self-representation is necessary, and (3) able to maintain attorney-client privilege." *State v. McDonald*, 143 Wn.2d 506, 512-13, 22 P.3d 791 (2001). Under article I, section 22 of the Washington Constitution self-represented defendants must have reasonable access to state provided resources in order to prepare a defense. *Silva*, 107 Wn. App. at 622.

In *Silva,* the defendant who was in prison, did not have physical access to the law library, did not receive research services from standby counsel, and did not know of the research services available to him. 107 Wn. App. at 623. On appeal, the court determined the defendant still had reasonable access to state resources because he was able to request materials from a law librarian and he was given a list of available materials. *Silva*, 107 Wn. App. at 623. Reasonable access does not mean immediate, unfettered access.

Here, the trial court did not abuse its discretion when it restricted West's access to standby counsel when the jury was present. It provided him access to counsel at other times outside the presence of the jury.

West further argues that the trial court restricted his access to standby counsel to courtroom breaks, and thereby denied him reasonable access to state resources. This argument is contrary to the facts. The trial court only restricted West's access to standby counsel when the jury was present. The trial court made this restriction to ensure the jury knew West was proceeding without counsel. The court did not otherwise limit West's access to state resources, West could confer with his standby counsel at any time outside of the jury's presence. In addition, West requested the reappointment of counsel after one witness, and the court granted that request. It also allowed West to recall that witness for questioning.

West relies on a case holding that when a defendant is represented by counsel, the court cannot interfere with counsel's right to consult with the defendant. *See Geders v. United States*,

425 U.S. 80, 91, 96 S. Ct. 1330, 47 L. Ed. 2d 592 (1976). That case is distinguishable from the facts here because West represented himself.

IV.    PROPENSITY EVIDENCE

West argues that the court abused its discretion in three ways by admitting testimony from his CCO. First, the court failed to balance the probative value and the prejudicial effect of the CCO's testimony under ER 404(b). Second, the court improperly admitted evidence that West had an outstanding warrant for violating his community custody conditions. Third, the court allowed the State to use the CCO's testimony that he had violated his community custody conditions to convince the jury he had failed to register as a sex offender. We disagree.

A trial court's admission of evidence is reviewed for abuse of discretion. *State v. Pirtle*, 127 Wn.2d 628, 648, 904 P.2d 245 (1995). An abuse of discretion exists "[w]hen a trial court's exercise of its discretion is manifestly unreasonable or based upon untenable grounds or reasons." *State v. Powell*, 126 Wn.2d 244, 258, 893 P.2d 615 (1995).

ER 404(b) governs the admission of substantive evidence of prior crimes or acts. *State v. Bell*, 60 Wn. App. 561, 564, 805 P.2d 815 (1991).

Under ER 404(b), evidence of prior acts is "not admissible to prove the character of a person in order to show action in conformity therewith." It may be admitted to prove motive, opportunity, intent, preparation, plan, knowledge, identity, or absence of mistake or accident. ER 404(b). To admit evidence under ER 404(b), the trial court must "(1) find by a preponderance of the evidence that the misconduct occurred, (2) identify the purpose for which the evidence is sought to be introduced, (3) determine whether the evidence is relevant to prove an element of the crime charged, and (4) weigh the probative value against the prejudicial effect." *State v. Thang*, 145 Wn.2d 630, 642, 41 P.3d 1159 (2002).

11

Generally, the ER 404(b) balancing test should be conducted on the record. *State v. Gunderson*, 181 Wn.2d 916, 923, 337 P.3d 1090 (2014). However, a trial court's failure to balance the probative value and prejudicial effect of evidence on the record is not a fatal error if the court identified the purpose for the evidence. *State v. Hepton*, 113 Wn. App. 673, 688, 54 P.3d 233 (2002). Under *Hepton*, this court can conduct the balancing under ER 404(b) provided the trial court identified the purpose of the evidence. 113 Wn. App. at 688.

A.      Balancing under ER 404(b)

The trial court did not abuse its discretion because it identified the purpose for admitting the evidence at issue, and its probative value outweighed its prejudicial effect. The trial court analyzed the CCO's testimony and ruled that certain aspects were relevant and admissible, while other portions would be excluded. The court did not admit propensity evidence. It admitted the relevant evidence to prove West knew he had to register, that he had to reregister when he moved, and that he had been living at the hotel. Although the court did not balance the prejudicial effect of the evidence with its probative value, we may conduct the ER 404(b) balancing.

The probative value of the CCO's testimony outweighed its prejudicial effect. First, the CCO's testimony about the existence of an arrest warrant had previously been admitted without objection; therefore, no prejudice can be shown from the CCO's testimony regarding the warrant. West's CCO also testified that West was subject to community custody conditions, that he had told West to register his address with the sheriff's department, and that he knew West was staying at the hotel. This testimony was highly probative because it was necessary to prove West knew he was required to register, and that he lived at the hotel, essential facts of the State's case. The testimony had minimal prejudice, if any. A prior witness had already testified without objection

12

that West had an outstanding warrant and other evidence showed that West had previously registered with the sheriff's department and that he lived at the hotel.

For these reasons, we conclude the trial court did not abuse its discretion when it admitted the CCO's testimony.

B.    Community Custody Evidence

West's second claim is that the trial court improperly admitted evidence that West had previously violated his community custody condition. West's argument misstates the facts. The court sustained every objection to evidence that went beyond the mere existence of the warrant. At the hearing to determine the admissibility of the CCO's testimony, the court expressly excluded any mention that West had previously violated his community custody conditions. When the CCO did testify that West had violated his community custody conditions, West objected. The court sustained the objections and instructed the jury to disregard the testimony. Juries are presumed to follow the court's instructions. *State v. Lamar*, 180 Wn.2d 576, 586, 327 P.3d 46 (2014).

West argues the prosecution "repeatedly elicited" testimony from West's CCO that West violated his community custody conditions. Br. of Appellant at 41. However, contrary to West's argument, the court did not admit the evidence that West had previously violated his community custody conditions. It excluded such testimony and told the jury to disregard any mention of such evidence.

V.    PROSECUTORIAL MISCONDUCT

West argues that the State committed prosecutorial misconduct by referring to West's community custody violations during closing arguments. We disagree.

The Sixth Amendment to the United States Constitution guarantees a defendant a fair trial but not a trial free from error. *State v. Reed*, 102 Wn.2d 140, 145, 684 P.2d 699 (1984). The

burden rests on the defendant to show the prosecuting attorney's conduct was both improper and prejudicial. *In re Pers. Restraint of Glasmann*, 175 Wn.2d 696, 704, 286 P.3d 673 (2012).

In the context of closing arguments, the prosecuting attorney has wide latitude in making arguments to the jury and prosecutors are allowed to draw reasonable inferences from the evidence. *Glasmann*, 175 Wn.2d at 704. Courts review allegedly improper comments in the context of the entire argument. *State v. Fisher*, 165 Wn.2d 727, 747, 202 P.3d 937 (2009).

If a defendant does not object during trial, his prosecutorial misconduct claim is considered waived unless the misconduct is "'so flagrant and ill-intentioned that it cause[d] an enduring and resulting prejudice that could not have been neutralized by a curative instruction.'" *In re Pers. Restraint of Caldellis*, 187 Wn.2d 127, 143, 385 P.3d 135 (2016) (quoting *State v. Brown*, 132 Wn.2d 529, 561, 940 P.2d 546 (1997)).

We evaluate whether misconduct is flagrant and ill-intentioned by focusing "less on whether the prosecutor's misconduct was flagrant or ill intentioned and more on whether the resulting prejudice could have been cured." *State v. Emery*, 174 Wn.2d 741, 762, 278 P.3d 653 (2012). Prosecutorial misconduct that denies a defendant a fair trial is flagrant and ill-intentioned. *In re Pers. Restraint of Phelps*, 190 Wn.2d 155, 166, 410 P.3d 1142 (2018).

The state commits prosecutorial misconduct during closing arguments if the prosecution states its opinions or its comments are highly inflammatory. *See State v. Dhaliwal*, 150 Wn.2d 559, 577-79, 79 P.3d 432 (2003).

We conclude that the State did not commit misconduct during closing arguments because the court correctly excluded the State's improper statements after West objected to them. When the State improperly started to argue propensity evidence, the court sustained West's objections and instructed the jury to disregard the argument. In addition, regarding the State's arguments to

which West did not object, we conclude they were not flagrant and ill-intentioned and that any improper argument could have been cured with an instruction to the jury.[3]

West has not proven that the prosecution's statements prejudiced him, nor did he attempt to prove that the prosecution's statements were so inflammatory that they could not be neutralized by a curative jury instruction. West did not object to the prosecution's final comment about West's community custody provisions.

West has not carried his burden to show that the State's argument prejudiced him or that any improper comments could not have been cured with an instruction.

We affirm.

A majority of the panel having determined that this opinion will not be printed in the Washington Appellate Reports, but will be filed for public record in accordance with RCW 2.06.040, it is so ordered.

Melnick, J.

We concur:

Worswick, P.J.

Maxa, J.

---

[3] West did not argue the standard of review or the legal principles associated with prosecutorial misconduct in his appellate brief.